**In the Interest of G.R., A Child,**

**State of Iowa and T.J.R., Appellants.**

**No. 83–1122.**

Supreme Court of Iowa.

May 16, 1984.

Thomas J. Miller, Atty. Gen., Brent D. Hege, Asst. Atty. Gen., and Virginia T. Larson, Asst. Story County, for appellant State of Iowa.

John L. Timmons of Pasley, Singer, Pasley, Holm, Timmons & Mathison, Ames, for appellant natural mother.

Christine A. Hunziker, Asst. Public Defender, Ames, for appellee G.R.

Considered by REYNOLDSON, C.J., and McCORMICK, SCHULTZ, CARTER and WOLLE, JJ.

SCHULTZ, Justice.

This is an appeal from an adjudicatory hearing in a child-in-need-of-assistance (CHINA) proceeding pursuant to Iowa Code section 232.96. In support of its CHINA petition, the State presented evidence that the child was the product of an emotionally troubled family whose members were in need of counseling and treatment. Although the court determined that the child needed assistance and his parents were unable to provide it, the court concluded its aid was not required and dismissed the petition because it felt the child's and father's resistance to counseling would render treatment ineffective. At issue here, is when and in what circumstances may a juvenile court dismiss a petition on the statutory ground that its aid is not required. Iowa Code § 232.96(8).

The State, joined by the mother, asserts the court prematurely decided counseling would be futile and erred in equating this issue with its determination that the court's aid was not required. Based on our de novo review of the record, *In re Interest of J.R.*, 315 N.W.2d 750, 752 (Iowa 1982), we agree and reverse and remand for a dispositional hearing pursuant to Iowa Code section 232.99.

The child is a fifteen-year-old boy whose parents separated and instituted a dissolution action several months before this proceeding. The boy lived with his mother until shortly before the CHINA petition was filed. He was upset by his parents' separation and apparently blamed his mother for the breakup, and, as a result, his behavior became increasingly assaultive. After one final blowup, he was temporarily placed in a shelter care home by the juvenile court and subsequently released into his father's care. Thus, he has been living with his father since early February of 1983 even though the dissolution decree filed in May of that year placed the boy in his mother's custody.

The present CHINA proceeding was initiated by an assistant county attorney in a petition alleging that the child was

> [i]n need of treatment to cure or alleviate serious mental illness or disorder, or emotional damage as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior toward self or others and whose parent, guardian, or custodian is unwilling or unable to provide such treatment.

Iowa Code § 232.2(5)(f). The petition was supported by a statement of fact describing the child's physically and verbally abusive behavior.

An adjudicatory hearing was held in May and included testimony from the child, his parents, an adult sibling, a probation officer and social worker. The evidence revealed that prior to the hearing the boy and his mother voluntarily completed two sessions of counseling with the social worker but that the child subsequently declined further counseling with the approval of his father.

As noted earlier, the court found that the State had met its burden on the grounds alleged in the CHINA petition but nevertheless dismissed the petition because its aid was not required. In so ruling, the court stated: "[I]t is apparent to the court that there will be no effective counseling." In a subsequent order responding to an Iowa Rule of Civil Procedure 179(b) motion by the mother and State, the court elaborated on its initial dismissal:

> The court notes that this disposal of the matter is distasteful indeed to the court. It is not solely based upon the juvenile's statements that he would resist treatment. It is based upon the court's firm belief that the juvenile and the father would utilize all effective means to resist and sabotage treatment efforts. They would view it only as an intellectual challenge. The court does not require a disposition hearing to be convinced. The court will not commit its resources to the remote chance that there would be some success.

The juvenile judge went on to note that he had recently attended a medical school seminar on aggressive and anti-social behavior and then made a diagnosis of the child's personality, which included an unfavorable prognosis for successful treatment and the child's future happiness and emotional well being.

No issue is presented on the court's factual determination that the child needed assistance since his counsel conceded the validity of this aspect of the court's ruling at oral arguments. Thus, we see no need to discuss in great detail the operative facts and find it sufficient to summarize the evidence in the following manner.

All family members had difficulty dealing with each other, and there was a long and extensive history of family strife which continued after the separation of the parents and up to the time of the hearing. The child had serious problems in appropriately expressing his anger and in controlling his emotions and behavior. He was frequently late to or absent from school, and even though he is exceptionally intelligent, his grades were mediocre at best. The father and son minimized the child's problems indicating they were solved by the voluntary custody change. Generally, they felt the mother was manipulative and bent on continuing family strife by insisting on counseling against their will.

Child-in-need-of-assistance proceedings are governed by Division III of Iowa Code Chapter 232. Provisions for an adjudicatory hearing are made in section 232.96 and the permissible parameters of the juvenile court's initial ruling are set out in the following subsections of 232.96 which provide respectively:

> 8. If the court concludes facts sufficient to sustain the petition have not been established by clear and convincing evidence *or if the court concludes that its aid is not required in the circumstances, the court shall dismiss the petition.*
> 9. If the court concludes that facts sufficient to sustain the petition have been established by clear and convincing evidence *and that its aid is required,* the court may enter an order adjudicating the child to be a child in need of assistance.

(Emphasis added.)

The negative form of the underlined phrase in the first quoted subsection provides an alternative ground for dismissal after an adjudicatory hearing while the positive statement in the latter subsection prescribes an additional requirement that must be met before the court may enter an order adjudicating a child in need of assistance. The narrow issue in this appeal concerns the correct application of the phrase in subsection 8. Stated otherwise, when and in what circumstances may the juvenile court rely on this statutory ground as a basis for dismissing the petition?

The State contends the juvenile court erred by equating the issue of whether treatment or counseling would be effective with the issue of whether the petition should be dismissed because the court's aid was not required. The State somewhat modifies this stance by admitting they do not generally disagree with the court's con-

clusion "that there are indeed cases where there is sufficient basis to sustain a petition but that the court's aid is not required." Nevertheless, they argue that this statutory standard for dismissal should be invoked sparingly and never when the court has available resources to correct the specific CHINA ground proven. It also points out that no factual evidence supports the court's finding that counseling would be ineffective. To the contrary, the State and mother claim the evidence shows that the two counseling sessions were productive and the therapist had worked other cases where court-ordered counseling was successful. Thus, they seek reversal and remand for a dispositional hearing in juvenile court.

The child, on the other hand, contends the juvenile court correctly reached and resolved the issue of whether the court's aid was required by determining counseling would be ineffectual in the present circumstances.

■■■ Because the meaning of this phrase is not obvious and the enactors did not define this language or provide guidance for the juvenile court in applying this statutory standard, our task is necessarily one of interpretation. *See Janson v. Fulton,* 162 N.W.2d 438, 443 (Iowa 1968) (Statutory interpretation is properly invoked when a statute contains ambiguities about which reasonable minds can disagree or be uncertain as to their meaning). The ultimate goal in construing any statute is to ascertain legislative intent. In striving for this goal, we must not only consider the language used but also must take into account the object sought to be accomplished or the evils and mischief intended to be remedied and arrive at a construction that will best effect its purpose rather than one that will defeat it. *Crow v. Shaeffer,* 199 N.W.2d 45, 47 (Iowa 1972). All parts of the statute must be considered together without placing undue emphasis on any single or isolated portion. *Wilson v. Iowa City,* 165 N.W.2d 813, 822 (Iowa 1969).

Our initial starting point is section 232.1 where the legislature has provided specific guidelines for interpreting Chapter 232 by stating: "This chapter shall be liberally construed to the end that each child under the jurisdiction of the court shall receive, preferably in his or her own home, the care, guidance and control that will best serve the child's welfare and best interests of the State...." *See also In re Henderson,* 199 N.W.2d 111, 120 (Iowa 1972) (Since purpose of the juvenile code is aimed at the care, control, and guidance of our children, their welfare and best interests govern); *In Interest of Welcher,* 243 N.W.2d 841, 843–44 (Iowa 1972) (The State, as parens patriae, has a duty to ensure that every child receives proper care and treatment).

■■■ Keeping in mind that a child's best interests, including proper care, education and treatment, are the paramount concerns in applying the juvenile code, we believe the standard that the court's aid is not required in section 232.96(8) should be construed narrowly. Thus, if the evidence shows that resources are available to correct the specific problem rendering a child in need of assistance, the court should not readily invoke this statutory standard as a basis for dismissal unless there are strong grounds for concluding its aid is not required.

Support of this position is found in the fact that the legislature saw fit to provide a two-stage procedure of adjudication and disposition. After a child has been adjudicated in need of assistance, the court is not allowed to make any disposition until a social investigation has been completed and a report submitted to the court. § 232.97. A physical and mental examination may also be ordered to aid the court in the dispositional stage. § 232.98. At the dispositional hearing provided for in section 232.99, the court may hear any additional relevant and material evidence, and all concerned parties may concentrate on and cooperate in arriving at a proper disposition. If the court determines at that time that the best disposition in the circumstances is to do nothing, it may so order. It also may suspend judgment and continue the pro-

ceedings subject to any terms or conditions that are necessary to assure the care and protection of the child. § 232.100.

This is not to say there will never be instances in which the court can conclude at the adjudicatory stage that its aid is not required and thus that dismissal is proper. As the State suggests, there may be cases where the juvenile court does not have a treatment or service available to correct a child's particular problem or instances in which an alternative system of services is available to provide comparable treatment without resort to the juvenile court.

Contrary to the State's position that the court can never determine its aid is not required when resources are available to correct the problem, we also believe there may be times when the court would clearly be in position to decide this issue without the aid of a dispositional hearing. If the issue on disposition hinges on whether or not court-ordered counseling is appropriate, the evidence before the court at the adjudicatory stage may be sufficiently developed to show that counselors predict little likelihood of success without extensive cooperation from the parents and child and that the necessary cooperation would not be forthcoming. In these unusual circumstances, the court could properly conclude its aid was not required and dismiss the petition.

Finally, we believe that while the specific statutory grounds in Iowa Code section 232.32(5) for adjudicating a child in need of assistance reflect a legislative determination that in these circumstances State intervention in family relations is generally more helpful than harmful, the court may determine, based on the evidence at the adjudicatory hearing, State intervention in a particular case would be more harmful than helpful. *See generally* Wald, *State Intervention on Behalf of "Neglected" Children: A Search for Realistic Standards*, 27 Stanford L.Rev. 985, 1007 (1975). In these circumstances, allowing the best interest of the child to govern, the court could conclude its aid was not required and dismiss the action even though the proof sustained the allegations in the CHINA petition.

Turning now to the facts of this case, we hold the trial court erred in dismissing the petition. Uncontradicted evidence in the record supported a finding that counseling would assist this particular child in dealing with his emotions and anger. Additionally, although the father and son testified that they preferred not to undergo counseling, no evidence supported the juvenile court's determination they would intentionally sabotage court-ordered counseling. Of course, the trier of fact is not bound to accept testimony as true merely because it is uncontradicted; nonetheless, it may not totally disregard evidence. *In re Marriage of Boyd*, 200 N.W.2d 845, 851–52 (Iowa 1972). Finally, the judge relied on evidence outside of the record that was based on "expertise" he felt he had acquired by attending a medical seminar. A trial judge may rely on general knowledge commonly possessed by humankind, but he cannot decide issues of fact based on peculiar individual knowledge. 89 C.J.S. *Trial* § 575 (1955).

Viewing the facts in light of the purposes of the juvenile act, we believe there was insufficient evidence at this stage of the proceeding for the court to conclude its aid was not required. An order adjudicating the child to be in need of assistance should have been entered, and the court should have held a dispositional hearing. Thus, the case is reversed and remanded for additional proceedings in conformity with this opinion.

REVERSED AND REMANDED.