Michael C. HAVILL, Appellant,

v.

IOWA DEPARTMENT OF JOB
SERVICE and Concerning
Midland Forge, Appellees.

No. 87–553.

Supreme Court of Iowa.

May 11, 1988.

Rehearing Denied June 15, 1988.

Donald L. Carr II, Cedar Rapids, for appellant.

Blair H. Dewey and William C. Whitten, Des Moines, for appellee Iowa Dept. of Job Service.

Iris Muchmore of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellee Midland Forge.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, NEUMAN, and SNELL, JJ.

CARTER, Justice.

Petitioner, Michael C. Havill, appeals from a district court decision affirming an order of the appeal board of Iowa Department of Job Service which, by reason of a tie vote of the board, upheld a hearing officer's denial of unemployment benefits. The issue on appeal is whether, following a disqualification, petitioner had sufficient new earnings to requalify for benefits under Iowa Code section 96.5(2)(a) (1985). On our review of the record, we conclude that his subsequent earnings did requalify him for benefits and that the district court erred in affirming the agency's denial of unemployment benefits.

Petitioner filed for unemployment benefits following his discharge from employment with respondent, Midland Forge, on August 9, 1985. An agency hearing officer found that petitioner had been discharged for misconduct, a circumstance which triggers a disqualification from unemployment benefits under Iowa Code section 96.5(2). That conclusion was upheld at the highest agency level, and petitioner did not seek relief from the disqualification by an application for judicial review.

As was his right under the collective bargaining agreement in force, petitioner filed a grievance with his union and sought binding arbitration. The arbitrator determined that petitioner was improperly discharged and should be reinstated. This resulted in petitioner being reinstated to

his former job with Midland Forge and receiving back pay of $12,333. While his arbitration proceeding was pending, petitioner earned $444 from temporary employment. Following the arbitration decision, he returned to work at Midland Forge on February 3, 1986. Between that time and the date he was laid off, he earned $712.20. Following this layoff, petitioner again applied for unemployment benefits.

◼ In order to requalify for unemployment benefits following a misconduct discharge disqualification, it is necessary to receive additional wages for insured work equal to at least ten times the worker's weekly benefit amount. Iowa Code § 96.5(2)(a). Petitioner's weekly benefit amount is $158. Therefore, in order to requalify it was necessary for him to have been paid wages for insured work equal to $1580. Excluding the back pay award, his earnings subsequent to the agency's imposition of the misconduct disqualification totaled $1156.28. As a result, it was necessary for the agency to determine whether the back pay award of $12,333 could be counted toward petitioner's requalification.

The agency hearing examiner determined that back pay could not be considered in view of the requirement of section 96.5(2)(a) that the worker have *"worked in* and been paid wages for insured work." (Emphasis added.) The agency appeal board was equally divided concerning whether that interpretation was correct. This resulted in an affirmance of the hearing officer's order as the final agency action. In upholding the agency decision, the district court applied a literal reading of the statute and determined that the words "has worked in" require an actual performance of services in return for the wages received. Petitioner asserts that this was error.

In arguing for reversal, petitioner urges that this court held in *Hiserote Homes, Inc. v. Riedemann,* 277 N.W.2d 911, 915 (Iowa 1979), that a back pay award constitutes wages under our unemployment compensation statutes. He further urges that the rationale, which underlies the statutory

requirement of additional insured work to gain requalification following a misconduct disqualification, is the exaction of a legislatively prescribed minimum contribution base to justify the payment of future benefits. Petitioner urges that this purpose is satisfied because the back pay does constitute insured wages on which contributions have either been paid or are owed.

Respondent agency and the employer argue that the interpretation of the statute which petitioner proposes ignores the clear import of the language which sets forth the elements of "worked in ... insured work" and "has been paid wages" for insured work in the conjunctive.

In *Mrkonjich v. Erie Mining Co.,* 334 N.W.2d 378 (Minn.1983), the court was faced with a very similar issue involving the effect of a back pay award on postdischarge qualification for unemployment benefits. The statute in controversy in that case required "employment in insured work" for fifteen or more weeks at a prescribed minimum wage in order to qualify. The term "employment in insured work" was defined as "service performed ... for any employing unit." Dwelling on the "service performed" language in the latter definition, the employer in *Mrkonjich* made the same argument which respondents are making in the present case, *i.e.,* that services performed means work actually performed on the job. In rejecting this contention, the Minnesota court held that, because the periods of idleness which were experienced were not attributable to the employee's volition, the resulting back pay award should be counted in determining whether the necessary amount of requalification wages had been earned.

In *Griggs v. Sands,* 526 S.W.2d 441 (Tenn.1975), the court reached a similar result under a postdischarge qualification statute which defined insured wages as "all remuneration paid for personal services from whatever source." The court held that, for purpose of benefit qualification, remuneration paid for personal services is not limited to payments tied to work actually performed on the job. The court noted that an interpretation which required some

measurable performance of work could cause mischief in situations involving persons employed in a standby capacity. *Id.* at 444–45. The decision of the Tennessee court in *Griggs* was one of the authorities relied on by this court in *Hiserote Homes,* which held that back pay awards are wages for purposes of determining those weeks in which an insured worker was "totally unemployed."

■ Arguably, the language "worked in ... insured work" is somewhat more suggestive of the actual performance of services than the words "service performed for any employing unit" or "remuneration paid for personal services" contained in the Minnesota and Tennessee statutes. In seeking to derive the intent of the legislation, however, we find that this difference in verbiage is not so significant that the results approved in the Minnesota and Tennessee cases may not be attained under the Iowa statute.

■ In interpreting statutes, a court must take account of both the language employed and the object sought to be accomplished and attempt to arrive at an interpretation that will effect the intended purpose. *In re Girdler,* 357 N.W.2d 595, 597 (Iowa 1984); *In re G.R.,* 348 N.W.2d 627, 631 (Iowa 1984); *Lau v. City of Oelwein,* 336 N.W.2d 202, 203 (Iowa 1983). Although the district court's interpretation of section 96.5(2)(a) finds some support in the "worked in" language, we believe that this interpretation thwarts rather than advances the overriding purposes of the employment security laws. We agree with petitioner's argument that the purpose of the wage requirements for requalification under section 96.5(2)(a) has been satisfied with regard to the present benefit claim.

The judgment of the district court is reversed and the case is remanded to that court for an order reversing the final agency decision.

REVERSED AND REMANDED.