# IN THE COURT OF APPEALS OF IOWA

—————————————

No. 25-0727
Filed March 11, 2026

—————————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**DeMarquis Lazelle Forney,**
Defendant–Appellant.

—————————————

Appeal from the Iowa District Court for Black Hawk County,
The Honorable Joel Dalrymple, Judge.

—————————————

**AFFIRMED**

—————————————

Alan R. Ostergren of Alan R. Ostergren, PC, Des Moines, attorney for
appellant.

Brenna Bird, Attorney General, and Adam Kenworthy, Assistant Attorney
General, attorneys for appellee.

—————————————

Considered without oral argument
by Ahlers, P.J., and Buller and Sandy, JJ.
Opinion by Sandy, J.

**SANDY, Judge.**

A no-contact order is not a suggestion. When a defendant engages in a course of conduct that would cause a reasonable person to feel terrorized or threatened, the law calls it stalking. Our task on appeal is not to reweigh or second-guess the jury's credibility determinations, *see State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006), but to decide whether substantial evidence supports the verdict, *see State v. Slaughter*, 3 N.W.3d 540, 546 (Iowa 2024). On this record, it does.

## BACKGROUND FACTS AND PROCEEDINGS

DeMarquis Forney and the victim were in an intimate relationship and lived together at the victim's home beginning in early 2021. In July 2022, the district court entered a no-contact order against Forney, naming the victim as the protected party. Despite the no-contact order, Forney and the victim went on vacation and continued to live together until January 2024. That month, following escalating arguments, the victim told Forney he was no longer welcome in her home and told her son to call the police if Forney came to the house.

On January 21, 2024, Forney came to the house, and the victim's son called the police, resulting in Forney's arrest for violating the no-contact order. Following his arrest, Forney was charged with one count of stalking in violation of a protective order, a class "C" felony, in violation of Iowa Code section 708.11(3)(a)(1)(2024). Because Forney had twice previously and separately been convicted of a felony offense, his charge was also subject to a habitual offender enhancement under section 902.8.[1]

---

[1] At trial, the jury answered a special interrogatory that found Forney subject to a protective order when he committed the offense, and Forney stipulated to his prior felony

A two-day jury trial began on November 19, where the victim testified about various unwanted contacts she had with Forney in January and February 2024. She testified that Forney drove past her while she was in her workplace private parking lot, resulting in her employer transferring her to a different location. The State also introduced security camera footage showing that Forney had entered her property on two separate occasions. She further testified about a series of text messages that Forney sent her on February 10 and 15, supported by the State's introduction of screenshots of those text messages as evidence. She testified the text messages made her feel frightened and intimidated. She attributed her acts of moving out of her home for a month and a half, purchasing a handgun, and taking a class on how to use the handgun to the fear she felt from those text messages.

The jury ultimately returned a guilty verdict. As a result, Forney was sentenced to an indeterminate fifteen-year term of incarceration with a three-year mandatory minimum.

## STANDARD OF REVIEW

We review challenges to sufficiency of the evidence for correction of errors at law. *State v. Cook*, 996 N.W.2d 703, 708 (Iowa 2023). We are bound by the jury's verdict if it is supported by substantial evidence. *Slaughter*, 3 N.W.3d at 546. Substantial evidence exists if the record "would convince a rational fact finder the defendant is guilty beyond a reasonable doubt." *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022) (citation omitted). "Evidence

---

convictions for purposes of the habitual offender enhancement. Because Forney is not challenging the special interrogatory or his stipulation, we do not address those issues on appeal. *See* Iowa Code §§ 708.11(3)(a)(1), 902.8. Thus, we only address the sufficiency of the evidence supporting Forney's conviction for stalking under Iowa Code section 708.11(3).

which merely raises suspicion, speculation, or conjecture is insufficient." *State v. Casady*, 491 N.W2d 782, 787 (Iowa 1992). "We consider all evidence, not just the evidence supporting the conviction, and view the evidence in the light most favorable to the State, 'including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *State v. Ernst*, 954 N.W.2d 50, 54 (Iowa 2021) (citation omitted).

## DISCUSSION

Because there was no objection to the instructions given to the jury at trial, "the jury instructions become the law of the case for the purposes of our review of the record for sufficiency of the evidence." *State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009). Thus, to convict Forney of stalking, the State had to prove:

> 1. During the period of January 1, 2024 through February 15, 2024, [Forney] purposefully engaged in a course of conduct directed at [the victim] that would cause a reasonable person:
>
> > a. To feel terrorized, frightened, intimidated, or threatened, or
> >
> > b. To fear [Forney] intends bodily injury to or the death of [the victim] or a member of [the victim's] immediate family.
>
> 2. [Forney] knew or should have known that [the victim]:
>
> > a. Would feel terrorized, frightened, intimidated or threatened, or
> >
> > b. Would be placed in reasonable fear of bodily injury or death to [the victim] or a member of her immediate family.
>
> 3. [Forney]'s course of conduct caused [the victim] to feel terrorized, frightened, intimidated, or threatened, or to be placed in reasonable fear of bodily injury or death to [the victim] or a member of her immediate family.

Forney contends that the State failed to prove the first and third elements—that Forney engaged in conduct that would cause a reasonable person to feel terrorized, frightened, threatened, or to fear he intended bodily injury to or the death of the victim or a member of her immediate family, and that Forney's conduct caused this result. *See* Iowa Code § 708.11(2). According to Forney, because he and the victim had been in a four-year relationship where the victim admitted the language provided as evidence against Forney was regularly used, a reasonable person could not make such a finding. Forney also advances that the State should have only charged him with violations of a no-contact order instead of enhancing the charge to stalking, using *State v. Truesdell* to support this contention. *See* 679 N.W.2d 611, 619 (Iowa 2004). We disagree.

First, Forney's course of conduct resulted in various responses from the victim, many of which indicated that she felt terrorized, frightened, threatened or that she feared bodily injury or harm to her or her immediate family. She testified that Forney came to her place of work and residence on various occasions. In response, the victim's work transferred her to a different location, and she installed more security cameras at her house.

Further, the State introduced an array of threatening text messages sent by Forney, stating various threats from "enjoy one of your few days left," to "Im [sic] willing to go as far as death," to "please don't believe the illusion that your [sic] safe," to more directly threatening messages such as "when I kill yo bitch ass . . . show them this message," and "bitch you dead and don't even know it." The victim testified that after receiving these messages, she moved out of her house for over a month, purchased a handgun, participated in a class on how to use the handgun, and reported Forney to the police, providing them with copies of Forney's text messages.

The jurors were free to credit or discredit the victim's testimony. *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993). From the totality of the evidence—the victim's testimony and the images of the texts introduced as evidence—the jury ultimately determined that this conduct would lead a reasonable person to feel terrorized, frightened, intimidated or threatened, or fear bodily injury or death, and that the victim's actions were a result of Forney's text messages.

Forney also raises issues with the State's elevation of the offense from violations of a no-contact order to stalking, asserting "[t]he State cannot use speculation to transform a minor offense into a major one." *See Truesdell*, 679 N.W.2d at 619. Forney's use of *Truesdell* is misguided, as the central issue there was the State's failure to prove the defendant's specific intent regarding a conviction of a specific intent crime—possession with intent to manufacture a controlled substance. *See id.*

However, stalking is a general intent crime. *State v. Neuzil*, 589 N.W.2d 708, 712 (Iowa 1999) (explaining that a specific-intent requirement would "negate the purpose of the anti-stalking statute—to enable law enforcement to get involved in a harassing situation before physical confrontation results"). Thus, the victim's reasonable perception is enough for the jury to determine whether they believe Forney is guilty or not. *See id.* Forney's intent does not matter. *See id.*; *State v. Ethier*, No. 24-1184, 2025 WL 2924963, at *3–4 (Iowa Ct. App. Oct. 15, 2025) ("The 'focus is not on the defendant's mental state but on the result defendant's purposeful acts cause in a reasonable person.'" (quoting *Neuzil*, 589 N.W.2d at 711)). This consideration, combined with the totality of the evidence, clearly permits the jury to make a fair inference of guilt, generating more than mere speculation. *See State v. Jones*, 967 N.W.2d 336, 343–44 (Iowa 2021).

Because sufficient evidence supported the jury verdict, we affirm Forney's conviction.

**AFFIRMED.**